

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS:MJJ
F. #2013R00958

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 15, 2015

By ECF

The Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Choudry Khalil
               Criminal Docket 13-386 (S-3) (RRM)

Dear Judge Mauskopf:

      The government respectfully moves in limine to preclude the defense from cross-examining government witnesses or presenting argument to the jury concerning the government's purportedly improper motives in investigating or prosecuting this case. Additionally, the government submits a full proffer of the financial records evidence it intends to offer at trial to demonstrate the defendant's participation in a scheme to distribute false identification documents and to smuggle, transport, and harbor undocumented aliens in the United States. Finally, the government offers additional authority in further support of its pending motion in limine to cross-examine the defendant about his fraudulent prior marriage.

I.     Alleged Government Misconduct

      At oral argument on April 10, 2015, defense counsel Gerald J. McMahon, Esq., indicated that he intended to vigorously cross-examine Federal Bureau of Investigation ("FBI") Special Agent Tenzin Atsatsang concerning allegations in a recently filed civil suit alleging that Special Agent Atsatsang and numerous other FBI special agents retaliated against a person who refused to become an informant by placing the person on the "No Fly List."[1] In sum and substance, Mr. McMahon stated that exploring such allegations of government misconduct would be central to his anticipated defense at trial. Notably, two of

---

[1]     As to be detailed in a separate submission, the government vigorously contests the veracity of these allegations.

the charges in the present case pertain to material false statements made by the defendant during an interview with FBI agents, including Special Agent Atsatsang. Additionally, Mr. McMahon recently filed a letter in support of his continuing efforts to cross-examine Special Agent Atsatsang regarding these allegations by citing a purported incident in which a law enforcement agent separated the defendant's wife from her children upon their arrival at John F. Kennedy International Airport and "for the next 5-6 hours, alternately threatened and cajoled Khalil's wife trying to get her (and Khalil) to become informants." (Def. Ltr. Apr. 15, 2015 at 5).[2]

This would not be the first trial in this district in which Mr. McMahon improperly attempted to raise a government misconduct defense by accusing the government of retaliating against a defendant for refusing to cooperate. For example, in United States v. Anthony Atico, 08-CR-559 (CBA), Mr. McMahon contended in opening argument that the prosecution was motivated by a vindictive desire to punish the defendant for not cooperating with law enforcement authorities and a desire to advance the careers of the government agents and prosecutors. When the Honorable Carol B. Amon asked Mr. McMahon whether his trial strategy was to "establish that this indictment is somehow [a] vendetta against [the defendant] for failing to cooperate," Mr. McMahon responded, "Precisely." (Tr. July 14, 2010 at 55.)

Under federal law, claims of improper prosecutorial motive are improper, as they "raise[] an issue that is independent of the question of the defendants' guilt or innocence," and "must be directed to the court, not the jury." United States v. Stewart, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004); see United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) ("[A] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," and, therefore, such defense "is an issue for the court rather than the jury" (citation and quotation marks omitted)); United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973) ("The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution."). Accordingly, under the Federal Rules of Criminal Procedure, such claims must be raised in advance of trial. Fed R. Crim. P. 12(b)(3); cf. United States v. Sun Myung Moon, 718 F.2d 1210, 1229 (2d Cir. 1983); Foy v. United States, 838 F. Supp. 38, 41 n.3 (E.D.N.Y. 1993) ("[A] defendant waives his defense of selective prosecution unless he properly raises it before trial.").

In Stewart, the Honorable Miriam Goldman Cederbaum granted the government's motion to preclude the defense from cross-examining government witnesses or arguing to the jury that the government's prosecution of Martha Stewart was driven by an improper motive. The court explained:

> [T]he defense wishes to elicit from witnesses who are cooperating with the Government their understanding of the

---

[2] The government vehemently contests the accuracy of this allegation.

> Government's eagerness to obtain evidence against Ms.
> Stewart. But any evidence that raises questions of prosecutorial
> bias against Stewart has no bearing on the issues properly before
> the jury, including the credibility of cooperating
> witnesses. Therefore, such evidence is inadmissible. The
> defendants are, of course, free to raise questions about the
> credibility and reliability of cooperating witnesses. But
> defendants may not use their ability to impeach such witnesses
> to introduce impermissible evidence of prosecutorial motive.

Stewart, 2004 WL 113506, at *1.

Here, the defense failed to raise a pretrial challenge to the propriety of the defendant's indictment. Indeed, at a recent status conference, Mr. McMahon stated that "I cannot in good faith say that I have found anything that was in law which justifies the making of . . . a [vindictive prosecution] motion." (Tr. Jan. 8, 2015 at 4.) Accordingly, there is no good faith basis for Mr. McMahon to now improperly argue to the jury that the indictment was vindictively brought as retribution for the defendant's failure to cooperate when interviewed by FBI agents. See, e.g., United States v. Blackshear, 313 Fed. Appx. 338, 344 (2d Cir. 2008) (rejecting defense contention that, where defendant refused to cooperate and was subsequently indicted, "prosecution was vindictive because of [defendant's] refusal to cooperate").

Moreover, by asking the jury to focus on the government's alleged motives in investigating and charging the defendant, Mr. McMahon seeks to improperly encourage the jury to decide the case on the basis of something other than the elements of the charged crimes, which amounts to an impermissible appeal for jury nullification. See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); see also United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (noting that "trial courts have a duty to forestall or prevent jury nullification").

In sum, the government respectfully requests that the defense be precluded from making arguments to the jury, eliciting testimony, or introducing evidence concerning the government's purported misconduct in investigating and charging the defendant.

II.     Financial Record Evidence

At oral argument, the Court suggested that the government should provide a full proffer of the financial records evidence that it intends to present to the jury to prove the alleged crimes. Accordingly, the government respectfully offers the following proffer, which it reserves the right to supplement or modify at trial.

3

At trial, the government will prove that the defendant was a key member of an organization (the "Organization") that not only helped transport undocumented aliens from Pakistan into the United States, but also provided such undocumented aliens with high-quality false identification documents that allowed them to work in the United States without legal authorization. In return for these services, the Organization charged its clients high fees, which often exceeded $10,000. At trial, the government expects to present testimony of clients of the Organization that they paid for services in cash and that the defendant was a primary member of the Organization responsible for collecting payment from clients in the United States. Another person responsible for collecting payment in the United States was Rashid Rasheed.

The defendant's bank records provide the following critical evidence of his key role in the Organization's illegal activities.

- The deposit of approximately $370,000, substantially in cash for the time period between 2008 and 2010;

- The deposit of thousands of dollars in checks payable to names used in some of the false identification documents produced by the Organization. For example, during a 9-month period spanning parts of 2010 and 2011, more than $4,000 in checks payable to "Mohammad Rauf," a name used on multiple false identity documents used by the Organization's clients, were deposited in the defendant's accounts. In addition, checks payable to "Rizwan Ahmed" and "Muhammad Pervaiz"—two names used on identification documents located in the defendant's residence—totaling $671 were deposited in his bank accounts.

- Outgoing checks totaling more than $4,000 payable to "Muhammad Bilal"—a known alias of the defendant's brother Jamil Ahmed, who is a convicted member of the Organization

- Outgoing checks ostensibly cosigned by both the defendant and the defendant's ex-wife totaling more than $40,000 payable to the defendant, "Muhammad Bilal," "Muhammad Pervaiz," and "Rashid Rasheed" during the period from April 2007 to November 2011. The defendant's ex-wife is expected testify that she had no access to the account after 1997 and that the signatures on the checks are not her own.

III. <u>Marriage Fraud</u>

Also at oral argument, the Court expressed concern about whether questioning about the defendant's marriage fraud would cause jurors to improperly conclude that the defendant was therefore guilty of the immigration charges in this case related to the smuggling, transporting, and harboring undocumented aliens. As the government indicated at argument, the alleged conduct, which, at its core, entails transporting undocumented aliens

4

from Pakistan into the United States through the use of false documents or smuggling, is very dissimilar from the defendant's entry into a sham marriage so that he could achieve legal status in the United States. Moreover, any potential prejudice could be cured by a limiting instruction to the jury that the sole purpose of such line of questioning is to explore the defendant's credibility as a testifying witness and not to establish commission of the charged offenses through propensity evidence. See United States v. Stewart, 433 F.3d 273, 307 (2d Cir. 2006) (noting "well-settled proposition" that jurors are presumed to follow limiting instructions).

IV.     Conclusion

For the reasons stated above, the government respectfully requests that the Court (1) preclude argument and evidence by the defense concerning alleged government misconduct and (2) permit cross-examination of the defendant regarding his fraudulent prior marriage.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      /s/
Alexander A. Solomon
Matthew Jacobs
Assistant U.S. Attorneys
(718) 254-6074/6401

cc:   Clerk of Court (RRM) (by ECF)
      Gerald J. McMahon, Esq. (by ECF and email)